UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ELSON M. DE BARROS,                          :
          Plaintiff,                          :
                         :
          v.                                 :      C.A. No. 18-503WES
                         :
FROM YOU FLOWER, LLC;                        :
ROBYIN FONTAINE &                           :
DELIVERY COMPANY CAMBRIDGE,                  :
MASSACHUSETTS,                              :
          Defendants.                         :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On September 11, 2018, Plaintiff Elson M. De Barros filed a *pro se* complaint against

Defendants From You Flower, LLC, ("FYF") and Robyin Fontaine, an FYF employee alleged to

be a "supervisor."[1]  ECF No. 5 at 3.  As amended, the operative pleading alleges negligence,

defamation and intentional infliction of harm due to the release of private information.  ECF No.

5 ("Complaint" or "Compl.").  In substance, Mr. De Barros claims that FYF failed to adhere to

his floral delivery instruction that no one was to receive his ordered bouquet of flowers and the

accompanying card message, except for the intended recipient, a physician named Dr. Susan

Redmond.  He directed that the delivery was to be made on July 5, 2016, to Dr. Redmond, at her

place of employment, the Arlington Family Medical Practice, P.C., in Arlington, Massachusetts

("Family Medical Practice").  Because Dr. Redmond was not at work that day, the bouquet was

left with a fellow employee.  The flowers were not welcome – the office manager of Dr.

Redmond's office called the police, which resulted in Mr. De Barros being charged, wrongfully

---

[1] Mr. DeBarros also named but never served "Delivery Company Cambridge Massachusetts."  It is not a party in the case.

as he claims, with the misdemeanor of accosting and annoying a person of the opposite sex.  At his criminal trial, Dr. Redmond was the principal witness against him.  In the instant case, Mr. De Barros claims that the Family Medical Practice office manager's action in calling the police was triggered by the flower delivery and was encouraged by Ms. Fontaine, who offered to supply the office manager with any information that she needed to file a charge against Mr. De Barros.

Mr. De Barros alleges that these events have caused him catastrophic damages.  In this case, he seeks to hold FYF and Ms. Fontaine legally responsible for these injuries.  In a second case, filed in this Court ten months after this one, Mr. De Barros sued Dr. Redmond, Family Medical Practice and its office manager (Jennifer Hillery), alleging that they are legally responsible for the same injuries.  De Barros v. Family Practice Group, P.C., No. 19-cv-367-WES, ECF No. 1 ("FMG Complaint" or "FMG Compl.").  In a third case, filed a few months before this one, Mr. De Barros sued – unsuccessfully – the Massachusetts Supreme Judicial Court seeking an order of mandamus to compel it to declare that the evidence against him in the criminal case was insufficient to warrant his criminal prosecution; in the pleading in that case, Mr. De Barros alleged that his efforts to "advocate for better medical treatment . . . resulted in . . . [De Barros] . . . being being criminally charged for alleged inappropriate conduct within a medical office."  Debarrros v. Supreme Jud. Ct. of Massachusetts, No. 18-CV-11119-ADB, 2018 WL 2744980, at *1 (D. Mass. June 7, 2018), aff'd, No. 18-1565 (1st Cir. Sept. 13, 2019).

After substantial delays due to seven unsuccessful interlocutory appeals, Defendants each filed a motion for summary judgment, both of which have been referred to me for report and recommendation.  28 U.S.C. § 636(b)(1)(B).  Ms. Fontaine's motion (ECF No. 85) is based on her discharge in bankruptcy of all debts, including Mr. De Barros' contingent claim against her in this case; it will be addressed in a separate report and recommendation.  FYF's motion for

summary judgment (ECF No. 86) is based on Mr. De Barros' version of the material facts, as well as on additional facts that Mr. De Barros has not disputed; assuming them to be true, FYF contends that it is entitled to judgment as a matter of law.  ECF No. 86.  After these two summary judgment motions were filed, Mr. De Barros requested and, in light of his *pro se* status, was afforded an unusually long extension of time to prepare and file his opposition – at his request, the due date was reset for August 30, 2021, with the caution that any further extensions or alterations to the schedule would not be lightly granted.[2]  Text Order of July 1, 2021.  August 30 has come and gone; Mr. De Barros has filed nothing.  Therefore, both motions are unopposed.

For the reasons that follow, I recommend that the FYF motion for summary judgment be granted and that judgment enter against Mr. De Barros and in favor of both FYF and Ms. Fontaine on the merits of all claims against them.[3]

## I.    Background[4]

Mr. De Barros was a patient of Dr. Susan Redmond, a physician who practices with Family Medical Practice in Arlington Massachusetts, beginning in March 2016 until July 2016.

---

[2] Mr. De Barros cannot colorably complain of lack of access to discovery.  Prior to the filing of the motions for summary judgment, the Court granted various of Mr. DeBarros's requests for non-duplicative subpoenas so he could complete discovery.  See ECF Nos. 73, 79; Text Orders of May 25, 2021 and June 11, 2021.  Both Defendants responded by reconfirming that all responsive documents had been produced.  ECF No. 101 at 1-2.

[3] Although FYF's motion asked for judgment only as to it, while Ms. Fontaine had relied on the protection of the discharge issued by the Bankruptcy Court in Connecticut, my analysis of FYF's argument resulted in the conclusion that the substantive claims against Ms. Fontaine are just as deficient as those against FYF.  Therefore, my recommendation encompasses both.

[4] FYF's motion lists undisputed facts ("DSUF") to which Mr. DeBarros has not responded.  ECF No. 86 at 2-4.  Pursuant to Local Rule Cv 56(a)(3), these are deemed admitted because they are not expressly denied or otherwise controverted.  In making my summary judgment recommendation, I have limited my consideration to these undisputed facts, as well as the facts in Mr. DeBarros' pleadings in this case.  However, Mr. DeBarros' Amended Complaint (ECF No. 5) is confusing and difficult to follow.  Mindful of his *pro se* status, I have tried to lay out the pertinent background in a coherent fashion by taking judicial notice pursuant to Fed. R. Evid. 201 of Mr. DeBarros' statements in his FMG Complaint and in his complaint underlying the decision of the Massachusetts federal court in Supreme Jud. Ct. of Massachusetts, 2018 WL 2744980.  In taking judicial notice of Mr. DeBarros' statements to this Court and other courts in other cases, I am taking notice of what Mr. DeBarros has stated, but I have not weighed the truth or accuracy of these statements or relied on them to resolve the instant motion.

FMG Compl. ¶¶ 6-7.  Mr. De Barros asked Dr. Redmond for a hug and other favors and sent her emails that proclaimed his love for her.  Id. ¶ 7.  Mr. De Barros has stated that he had misunderstood Dr. Redmond's "politeness and friendliness, as an invitation to pursue her further outside of their 'Patient to Doctor' relationship."  Id. ¶ 19.

On July 4, 2016, Mr. De Barros ordered a flower bouquet with a teddy bear and a card message to be delivered by FYF to Dr. Redmond at her office at Family Medical Practice.  DSUF ¶ 3; ECF No. 86-2 at 2.  The delivery was to be made on July 5, 2016.  Id.  As "special instructions," Mr. De Barros requested that, "you call recipient before delivery to see if ok to leave with front desk if recipient is unavailable."  DSUF ¶¶ 4, 9.  Mr. De Barros' attachments to his original complaint, as well as the FYF Order Management System,[5] reveal that, over the course of July 4 and into July 5, Mr. De Barros repeatedly emailed various versions of the card message to be included with the flowers to various persons at FYF.  See DSUF ¶¶ 6-8; ECF No. 1-1 at 1-8; ECF No. 86-2 at 2-3.  As reflected in the FYF Order Management System, FYF employees explained to Mr. De Barros that the message that he wanted was too long to be included as the card message (because it exceeded 175 characters); a truncated version was included as the card message instead.[6]  DSUF ¶¶ 6-8; ECF No. 86-2 at 2.

---

[5] The authenticity and content of this business record are deemed admitted.  See n.4 *supra*.

[6] Mr. DeBarros included the entire message in the attachment to his original complaint, ECF No. 1-1 at 1, as follows:

> My dear (Susan C. Redmond).  The more I watch you, the more I try to describe all its special qualities, would never be able to translate it into words because you are the most precious of women, the most perfect expression of the power of God!  You It brings me the certainty that it is not necessary to face storms or even beyond death to get to heaven, though I was able to face any adversity to stay near you.  You are my own Paradise and at the same time, you are the most sacred temple, where I will find peace for the mind and satisfaction to my body.  I can not imagine my days, my nights, my life, next to a woman who is not you, because you are the most perfect and adorable creature that exists, and without you my world would be extremely dark and empty.  Accept a kiss Elson Manuel

On July 5, 2016, the day Mr. De Barros wanted the flowers to be delivered, the FYF

Order Management System reflects that Mr. De Barros repeatedly emailed and called about the

order.  ECF No. 86-2 at 2-3.  At 11:46 and 11:56 a.m. on July 5, 2016, the FYF Order

Management System has entries indicating that Mr. De Barros wanted to edit his card message

again, but that it was too late in that the order was "already out" and "on the truck" for delivery.

Id. at 3.  According to FYF's records, at 12:42 p.m., in compliance with Mr. De Barros' "special

instructions" to FYF, an FYF representative told Mr. De Barros that the intended recipient (Dr.

Redmond) was not at work that day.  Id. at 4.  He responded at 12:45 p.m., that "[h]e now

doesn't want the card message dlvrd because she's not in the office and he doesn't want anyone

to read it."  Id.  This is consistent with Mr. De Barros' Amended Complaint, in which he alleges

that he "expressly requested that no one else was to receive the order except the intended

recipient."  Compl. ¶ 3.  However, FYF's Order Management System reflects that, by the time

this instruction was received, it was too late: "[w]e cannot stop the dlvry nor can we change the

card message."  ECF No. 86-2 at 4.  Next, at 1:28 p.m., FYF's Order Management System

reflects that Mr. De Barros changed course; "OK so now this customer is wanting the dlcl

again"; by 2:31 p.m., "he's called again and he's threatening this better be dlvrd or he will find a

---

Ms Redmond ,i have 3 question for you . this 3 question ,i want you to respond this  question
friday .first when I see you .  I want you to be mine . . number 2.i want you to remember , friday is
may birthday ,i want the want you to make July 8 , to be especial for us to remember forever .  I
skip all this question last time because I want friday to be especial .  planning for friday .  tank you

According to the FYF Order Management System (DSUF ¶ 8), the version of the card message actually sent is as
follows:

My Dear (Susan C. Redmond).  The more I watch you, the more I try to describe all its special
qualities, would never be able to translate it into words because you are the most precious of
women, the most perfect expression of the power of God!  I want you t
Elson M [De Barros]

ECF No. 86-2 at 2.

way to sue us." Id. at 4.  Meanwhile, FYF received confirmation that delivery had been made at

1:50 p.m.  DSUF ¶ 10; ECF No. 86-2 at 5.  When he was told that the flowers had been

delivered, Mr. De Barros claimed that he did not believe this was true and threatened to sue FYF

for "non-delivery of same day."  Id.

One of the several FYF employees who dealt with Mr. De Barros on July 5, 2016, was

Defendant, Robyin Fontaine; she became involved shortly after noon on July 5, 2016.  ECF No.

86-2 at 3-5.  The FYF Order Management System indicates that several of the FYF's employees

who dealt with Mr. De Barros perceived him to be berating and threatening.  DSUF ¶ 12; ECF

No. 86-2 at 3-4 (e.g., "very angry," "I went to Robyin due to the threats," "yelling," "swearing

and upset," "now threatening me saying he knows I'm in [location] and he can drive up here! . . .

said I am Macho and you are a woman").  These entries indicate that Ms. Fontaine was brought

in to deal with the situation.  Id. at 3; see DSUF ¶ 12.  Ms. Fontaine's first action after she

became involved was to instruct another employee "to refund him in full and do a comp because

this [FYF's inability to send the full-length card message][7] is our fault."  Id.  As evidenced by an

attachment Mr. De Barros appended to his Amended Complaint, Ms. Fontaine emailed Mr. De

Barros the next day (July 6, 2016) to advise him that his money for the order had been refunded

in full.  ECF No. 5-3 at 1-2; see DSUF ¶ 11.

Mr. De Barros continued to call FYF on July 6, 2016.  By this time, all but one of his

communications were with Ms. Fontaine.  ECF No. 86 at 5-6.  He continued to question the

signature of the person who accepted the flower delivery and Ms. Fontaine agreed to call the

Family Medical Practice office to ask who had signed for the flowers.  Id. at 6.  Ms. Fontaine's

---

[7] Ms. Fontaine's directive that Mr. DeBarros' money should be returned was made before the discovery that Dr.
Redmond was not at work on July 5, 2016.  Therefore, it is not causally linked to the confusion over the delivery.
See ECF No. 86-2 at 2-4.

entry in the Order Management System regarding her communication with Family Medical

Practice is as follows:

> Calling the office Katie signed for the flowers they fear this cm and will no longer
> be accepting flowers from him.  She said if the police need to be called they will
> cooperate fully.

Id. at 6; see DSUF ¶ 10.  Mr. De Barros' Amended Complaint confirms that Ms. Fontaine

emailed him on July 6, 2016, to advise him that the order had been delivered to Family Medical

Practice on July 5, 2016, and signed for by "Katie," and that she (Ms. Fontaine) had confirmed

all of this with a call to "Marie" of Family Medical Practice, who had told her that the recipient

was not in on July 5, 2016, but would be returning to work on July 6, 2016.  ECF No. 5-3 at 1;

see DSUF ¶ 10.  Mr. De Barros describes a different, though similar, version of this

communication in his interrogatory answers, swearing that Ms. Fontaine spoke to the "practice

maneger [at Family Medical Practice], Jenifer Heally,"[8] and Ms. Fontaine "encarage Ms Heally

pursuing a criminal charge against" Mr. De Barros, and stated that she (Ms. Fontaine) "will

support Ms Heally with any information she need to file a charge against plaintiff."  ECF No. 86

at 6 (De Barros Int. Ans.).  In these interrogatory answers, Mr. De Barros claims that Ms.

Fontaine spoke to him directly and that, during these communications with him, she "defame my

English skills[9] ,she say if I don't feel shame about send those noptes to Ms Redmond."  ECF No.

86 at 11.  According to the FYF Order Management System, Mr. De Barros also accused Ms.

Fontaine of forging the signature on the receipt for the flower delivery.  ECF No. 86-2 at 6.

---

[8] In his FMG Complaint, Mr. DeBarros names this individual as Jennifer Hillery, alleging that she is the office manager of Family Medical Practice.  FMG Complaint ¶ 4.  In the FYF interrogatory answers, he refers to her as "Jenifer Heally" or "Healy."  ECF No. 86 at 6.

[9] The FYF Order Management System reflects the concern by some of FYF's employees that Mr. DeBarros' seeming confusion about FYF's inability to deliver his full-length card message may have been due to a language barrier: "the customer had a hard time comprehending the fact that his card message is not getting delivered.  I apologize to him and tried to explain."  ECF No. 86-2 at 3.

In his <u>FMG Complaint</u>, Mr. De Barros has acknowledged that his "behavior and conduct" towards her caused Dr. Redmond to become "very upset, almost in tears, and shaken up." <u>FMG Compl.</u> ¶ 10. At some unspecified time, the office manager of Family Medical Practice, Jennifer Hillery, lodged a criminal complaint with the Arlington police against Mr. De Barros. <u>FMG Compl.</u> at 4. On September 21, 2016, Mr. De Barros was charged with the misdemeanor of accosting and annoying a person of the opposite sex. <u>FMG Compl.</u> ¶ 8. After Mr. De Barros' trial in Massachusetts state court resulted in a hung jury, the judge declared a mistrial, but denied Mr. De Barros' motion to dismiss on the ground that the evidence was insufficient to warrant a conviction. <u>De Barros v. Commonwealth</u>, 97 N.E.3d 685 (Mass. 2018). Mr. De Barros' appeal from the denial of the motion to dismiss was itself dismissed because the trial court, after refusing to dismiss based on the insufficiency of the evidence, subsequently dismissed for lack of prosecution. <u>Id.</u> De Barros then brought a mandamus action against the Supreme Judicial Court in federal court in Massachusetts based on his dissatisfaction with its refusal to review the trial court's determination that the evidence had been sufficient to warrant a conviction. <u>Supreme Jud. Ct. of Massachusetts</u>, 2018 WL 2744980, at *1. That case was also dismissed. <u>Id.</u>

In his complaint in <u>Supreme Jud. Ct. of Massachusetts</u>, Mr. De Barros pled that "he came to a medical provider to seek medical treatment which resulted in criminal prosecution without any physical violence involved, nor any attempt to procure a no-trespass or no-harassment order, . . . [and] Elson adamantly pleaded his innocence from the beginning and until today." <u>Supreme Jud. Ct. of Massachusetts</u>, No. 18-cv-11119-ABD, ECF No. 1 ¶¶ 23-24. The federal court quoted Mr. De Barros' statement: "[his] . . . being criminally charged for alleged inappropriate conduct within a medical office" was caused by his attempt to "advocate for better medical treatment." 2018 WL 2744980, at *1. Similarly, according to Mr. De Barros' <u>FMG Complaint</u>,

the criminal prosecution was caused by Dr. Redmond's improperly reacting to her patient as a threat – in breach of her duty to provide him with medical care. FMG Compl. at 7-8. The FMG Complaint alleges that the person who initiated the criminal charge was Jennifer Hillery, the office manager of the medical practice, and that the Commonwealth's complaining witness at his trial was Dr. Redmond. FMG Compl. at 3, 4.

In this case, Mr. De Barros relies on the conclusory allegation that FYF's negligence resulted in the broadcasting of the "bouquet and private note" at Family Medical Practice, which is what "led to the criminal complaint." Compl. ¶ 4. However, Mr. De Barros has admitted that he has no evidence regarding what happened at Family Medical Practice either when the flowers were delivered or when the card was opened and he has no evidence that there was ever any communication regarding him between FYF or any of its employees and law enforcement. DSUF ¶¶ 13, 14-16.

Mr. De Barros alleges that this wrongful criminal prosecution has ruined his life, reputation and earning potential, causing him to suffer physical illness, and to be unable to work, travel or get medical care. Compl. ¶¶ 6-7, 9. He seeks to hold FYF and Ms. Fontaine responsible for all of his claimed injuries. Mr. De Barros has admitted that he has no documentary evidence of any damages. DSUF ¶¶ 13, 17-18

## II.    Standard of Review

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party and drawing all justifiable inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

247, 255 (1986) (internal quotation marks omitted).  A "genuine" issue is one that "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  Id. at 250.  A "material" fact is one that "might affect the outcome of the suit under the governing law."  Id. at 248.  Summary judgment should be denied if there is sufficient evidence such that a jury could return a verdict for the nonmoving party.  Id. at 249-52.

The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he or she is therefore entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986).  If the movant satisfies this burden, with the proffer of evidence capable of authentication as admissible at trial, Joseph v. Lincare, Inc., 989 F.3d 147, 156 (1st Cir. 2021), then the nonmovant can only survive summary judgment by proffering evidence supporting the existence of a genuine issue of material fact to be resolved at trial.  Donovan v. Agnew, 712 F.2d 1509, 1516 (1st Cir. 1983).  The adverse party "may not rest upon the mere allegations or denials of his pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248.  When the nonmoving party bears the burden of proof, it is sufficient for the moving party to show an absence of evidence in support of the nonmoving party's case.  Celotex, 477 U.S. at 325.

Pro se complaints are generally held to "less stringent standards than formal pleadings drafted by lawyers."  O'Connor v. Yezukevicz, 589 F.2d 16, 18 (1st Cir. 1978) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  This relaxation of the formal requirements applies to the legal formalities of pleading and the demarcation of causes of action.  See Miles v. Ertl Co., 722 F.2d 434, 435 (8th Cir. 1983) (per curiam) (reversing district court's dismissal of case in which facts arguably asserted a cause of action, but the complaint was deficient in form and content).

Although *pro se* complaints are to be construed liberally, *pro se* litigants are not exempt from the Federal Rules or Local Rules.  Marcello v. Maine, 489 F. Supp. 2d 70, 77 (D. Me. 2007) (citing Rivera v. Riley, 209 F.3d 24, 27-28 & n. 2 (1st Cir. 2000)).  While a liberal reading may be appropriate in the summary judgment context, it is also true that "[j]udges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented plaintiff or devoting an excessive portion of their time to such cases." Clarke v. Blais, 473 F. Supp. 2d 124, 129 (D. Me. 2007); see Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006) (rules are meant to "dispel the smokescreen behind which litigants with marginal or unwinnable cases often seek to hide").

The Court's approach to summary judgment does not change for an unopposed motion like this one because the "failure of the nonmoving party to respond to a summary judgment motion does not in itself justify summary judgment." Lopez v. Corporación Azucarera de P.R., 938 F.2d 1510, 1517 (1st Cir. 1991).  It is well-settled that before granting an unopposed summary judgment motion, the court "must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." Id. (internal quotation marks omitted).

III.   **Choice of Laws**

For a case based only on state-law claims, the federal court sitting in diversity must choose the correct law to apply in reliance on the choice of law rules of the forum state. Baker v. St. Paul Travelers Ins. Co., 595 F.3d 391, 392 (1st Cir. 2010).  For tort-based claims such as defamation, Rhode Island uses an interest-weighing approach to determine which jurisdiction has the "most significant relationship to the events and the parties." Alifax Holding SpA v. Alcor Sci. Inc., 357 F. Supp. 3d 147, 155 (D.R.I. 2019) (cleaned up).  To determine choice of law in a

negligence action, Rhode Island law looks to four factors: (1) where injury took place; (2) where the conduct causing the injury occurred; (3) the domicile or residence of the litigants; and (4) where the relationship between the litigants is centered.  Toledo v. Van Waters & Roger, Inc., 92 F. Supp. 2d 44, 49 (D.R.I. 2000).

In this case, all relevant events occurred in Massachusetts, where Mr. De Barros was then living,[10] where the flowers were delivered to Family Medical Practice and where Mr. De Barros was criminally prosecuted.[11]  See De Barros v. Fam. Prac. Grp., P.C., No. CV 19-367WES, 2019 WL 4888638, at *1 (D.R.I. Oct. 3, 2019) (noting Mr. De Barros' acknowledgment to Court that "all Defendants and all operative events occurred completely in Massachusetts").  The only other state with any contact with the events or the parties is Connecticut where FYF and Ms. Fontaine reside.  See ECF No. 1-2.  Yet FYF's motion is based on the law of Rhode Island and, by his silence, Mr. De Barros has not disagreed with its choice.  Mindful of Mr. De Barros' *pro se* status, the Court has performed its analysis of FYF's arguments under the law of both Rhode Island and Massachusetts and has concluded that they are not materially different.  That is, whether analyzed under the law of Rhode Island or the law of Massachusetts, all of Mr. De Barros' claims, read with leniency due a *pro se* litigant, fail as a matter of law.

## IV.    Law and Analysis

### A.    Negligence

Under Rhode Island law, "[t]o maintain a cause of action for neligence, the plaintff must establish four elements: (1) a legally cognizable duty owed by defendant to plaintiff; (2) breach

---

[10] See ECF No. 86-2 at 2.

[11] At some time after all relevant events had concluded, Mr. DeBarros apparently moved to Rhode Island.  See DeBarros v. Areas USA Boston, LLC, C.A. No. 18-10265-FDS, 2018 WL 1904182, at *1 (D. Mass. April 20, 2018) (as of 2018, according to his pleading, "Elson DeBarros is a resident of Rhode Island."), appeal filed, No. 18-1394 (1st Cir. May 3, 2018).

of that duty; (3) that the conduct proximately caused the injury; and (4) actual loss or damage."
Medeiros v. Sitrin, 984 A.2d 620, 625 (R.I. 2009).  Under Massachusetts law, a viable
negligence claim requires a showing that a defendant owes a duty of reasonable care to the
plaintiff, the defendant committed a breach of that duty, the plaintiff suffered damage, and a
causal relationship exists between the breach of duty and the damage.  Jupin v. Kask, 849 N.E.2d
829, 834-35 (Mass. 2006).  In addition to being a cause in fact of the injury, the plaintiff must
show that the negligent conduct was a proximate or legal cause of the injury as well.  Almonte v
Kurl, 46 A.3d 1, 18 (R.I. 2012); Kent v. Com., 771 N.E.2d 770, 777 (Mass. 2002).

The foreseeability of both the risk of harm and the harm actually caused is an essential
element of a claim of negligence.  That is, in both Rhode Island and Massachusetts,
foreseeability is used to define both the limits of the duty of care and the limits of proximate
cause.  R.L. Currie Corp. v. E. Coast Sand & Gravel, Inc., 109 N.E.3d 524, 527 (Mass. App. Ct.
2018); see Selwyn v. Ward, 879 A.2d 882, 887 (R.I. 2005) (per curiam) (to establish negligence,
plaintiff must establish scope of defendant's duty based on foreseeability of harm to plaintiff;
neligence claim against liquor store owner fails because use of alcohol by minors to start fire not
foreseeable and therefore not proximately caused by sale of alcohol to minors).  As a practical
matter, in deciding the foreseeability question, it is not important whether "one defines a duty as
limited to guarding against reasonably foreseeable risks of harm or whether one defines the
necessary causal connection between a breach of duty and some harm as one in which the harm
was a reasonably foreseeable consequence of the breach of a duty."  R.L. Currie Corp., 109
N.E.3d at 527 (quoting Whittaker v. Saraceno, 635 N.E. 2d 1185, 1188 (Mass. 1994)).  If the
parties have no special relationship (such as the social host/guest relationship) to expand the
scope of the duty, and the harm is not foreseeable, the actor cannot be liable for it.  Selwyn, 879

A.2d at 887; <u>see</u> <u>Jesionek v. Massachusetts Port Auth.</u>, 378 N.E.2d 995, 997-98 (Mass. 1978)

(liability affirmed because it was reasonably foreseeable that unsecured forklift left in area

trafficked by invitees would be operated by inebriated seamen).  Related to this concept is the

doctrine of superseding cause: when a "series of events occur between the negligent conduct and

the ultimate harm, the court must determine whether those intervening events have broken the

chain of factual causation or, if not, have otherwise extinguished the element of proximate cause

and become a superseding cause of the harm."  <u>Kent v. Comm.</u>, 771 N.E.2d at 777 (Mass. 2002);

<u>see</u> <u>Martin v. Marciano</u>, 871 A.2d 911, 918 (R.I. 2005) (defendant may be relieved of

consequences of negligence by intervention of a responsible third party).  Proximate cause may

be resolved as a matter of law, when "a plaintiff has no reasonable expectation of proving that

'the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct.'"

<u>Hebert v. Enos</u>, 806 N.E.2d 452, 455 (Mass. App. Ct. 2004) (quoting <u>Kent</u>, 771 N.E.2d at 777);

<u>see</u> <u>Limonges v. Nalco Co.</u>, 157 A.3d 567, 570-71 (R.I. 2017) (issue of negligence may be

treated as a matter of law if the facts suggest only one reaonble inference).

When (as here) the relationship of the parties is contractual, negligence can arise from the

failure to perform the contract in a workmanlike fashion, using reasonable and appropriate care

and skill in doing it.  <u>Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.</u>, 788 N.E.2d 522, 531

(Mass. 2003); <u>see</u> <u>Nichols v. R.R. Beaufort & Associates, Inc.</u>, 727 A.2d 174, 179 (R.I. 1999)

(implied in every contract for work or services is duty to perform skillfully, carefully, diligenty;

negligent failure to do so is a breach of contract as well as a tort).  "Although the duty arises out

of the contract and is measured by its terms, negligence in the manner of performing that duty as

distinguished from mere failure to perform it, causing damage, is a tort."  <u>Herbert A. Sullivan,

Inc.</u>, 788 N.E.2d at 531 (internal quotation marks omitted); <u>Nichols</u>, 727 A.2d at 179 (negligent

performance of contract is both breach of contract and a tort).  However, if the negligent

performance of a contractual obligation imposes burdens on the wronged party, compensation is

limited to making that party whole; it may not include damages that would be "rank

speculation."  Air Safety, Inc. v. Roman Cath. Archbishop of Bos., 94 F.3d 1, 5 (1st Cir. 1996)

(Massachusetts law); Guzman v. Jan-Pro Cleaning Sys. Inc., 839 A.2d 504, 508 (R.I. 2003)

(court may award damages for breach of contract to place party in as good a position had parties

fully performed; damages cannot be speculative); Fusar v. Naccarato, 103 R.I. 324, 325, 237

A.2d 545, 546 (1968) (damages in tort must rely on legally competent evidence and may not rest

on conjecture or speculation).

In this case, Mr. De Barros' negligence claim against FYF[12] is based on its failure to

follow his instruction that he "expressly requested that no one else was to receive the order

except the intended recipient," as he alleged in his Amended Complaint, Compl. ¶ 3,

corroborated by the FYF Order Management System, which reflects that "[h]e now doesn't want

the card message dlvrd because she's not in the office and he doesn't want anyone to read it."

ECF No. 86-2 at 4.  FYF argues that this negligence claim fails as a matter of law because there

is no breach of a legally cognizable duty in that the risk of a wrongful criminal prosecution[13] is

not a foreseeable consequence of FYF's breach, as well as because FYF's conduct is not the

---

[12] Mr. DeBarros does not allege that Ms. Fontaine committed negligence against him, despite his use of the phrase "Defendants" in his negligence count.  Compl. at 2-3.  Indeed, she is not mentioned at all in Mr. DeBarros' description of the alleged negligence.

[13] Solely for purposes of this motion for summary judgment, the Court accepts as true Mr. DeBarros' contention that the criminal prosecution by the Commonwealth of Massachusetts was wrongful, despite proceedings in the Massachusetts state court suggesting otherwise, including that the criminal trial terminated with a hung jury and not by acquittal, as well as that the Massachusetts trial court denied Mr. DeBarros' motion to dismiss the prosecution based on the insufficiency of the evidence.  DeBarros, 97 N.E.3d at 685.

proximate cause or cause-in-fact of the wrongful criminal prosecution that led to Mr. De Barros' injuries.

Mindful of his *pro se* status, the Court assumes that Mr. De Barros can present facts sufficient to establish that FYF was negligent in performing its contractual undertaking to follow his instructions with the result that the flowers and the card message were left at Family Medical Practice at a time when Dr. Redmond was not at work.[14]  The Court focuses instead on FYF's duty, limned as it must be by what is foreseeable, as well as on the fatal (to the negligence claim) absence of proximate cause linking FYF's assumed misdelivery to the wrongful criminal prosecution of Mr. De Barros by the Commonwealth of Massachusetts.

As to the scope of FYF's duty as owed to Mr. De Barros in accepting the contractual undertaking to deliver flowers to Dr. Redmond at her office on July 5, 2016, I find that it is simply not foreseeable to a flower delivery company that a slip-up by delivering the flowers to a person who knows the recipient and accepts them on her behalf, instead of to the intended recipient herself, will result in the wrongful criminal prosecution of the sender.  Nor does FYF's handing the delivery to someone other than Dr. Redmond render it foreseeable that someone other than Dr. Redmond would open and read the card message addressed to Dr. Redmond. FYF's contractual duty to deliver according to Mr. De Barros' instructions certainly impacts whether Mr. De Barros' got the benefit of his bargain – that is, a delivery of fresh flowers

---

[14] This assumption bends *pro se* leniency past the breakpoint.  Mr. DeBarros relies only on his conclusory allegation with no specifics regarding when and how this instruction was transmitted, while the undisputed FYF Order Management System reveals that it was instructed to deliver on July 5, 2016, and to call in advance to ascertain if Dr. Redmond was at work that day, which FYF did.  The FYF Order Management System further reveals that Mr. DeBarros changed course twice after being told that Dr. Redmond was not in the office, ultimately insisting that the delivery had to be made on July 5, which it was.  These undisputed facts establish that FYF did not breach any conceivable standard of care, but performed its contractual undertaking competently and followed Mr. DeBarros' instructions to the letter.  There is nothing to support any other inference.  Therefore, summary judgment is alternatively appropriate because FYF's conduct simply was not negligent.

received in a timely way by the intended recipient with the intended card message. However, the undisputed evidence reflects that FYF returned all of the money Mr. De Barros paid once Ms. Fontaine learned of the confusion about the card message. Based on the facts presented by Mr. De Barros and accepting them as true, I find that Dr. Redmond's adverse reaction to the flowers and the card message and the actions that Dr. Redmond and her office manager took – all of which the Court assumes to be wrongful – amounts to a risk that was utterly unforeseeable. As such, it is so far outside the scope of FYF's duty as to require judgment as a matter of law against Mr. De Barros on his negligence claim.

As to causation, the facts presented unambiguously establish that the harm Mr. De Barros complains of – stemming from the assumed wrongful criminal prosecution – was caused by the fact that the flowers and note were delivered at all, and not by the manner of the delivery to a coworker instead of directly to Dr. Redmond. Thus, even it if were true that someone else opened the card and "broadcasted [its content] to the office and reached the manager," Compl. ¶ 4, as Mr. De Barros claims (despite his admission that he lacks any evidence of that fact), such a "broadcast" is not either the cause-in-fact or the proximate but-for cause why a wrongful criminal complaint was initiated against him. Rather, Dr. Redmond's reaction to the flowers and the card and her wrongful, as Mr. De Barros contends, conduct (as well as that of her office manager) in initiating a criminal prosecution that was pursued by the Commonwealth is a superseding cause that extinguishes any conceivable causal link between FYF's assumed delivery misstep and the injuries Mr. De Barros claims.

The final nail sealing closed the causation coffin is Mr. De Barros' admission that he has no evidence regarding what happened when the flowers were delivered or who read the card, as well as his admission that there is no evidence that permitting the inference FYF had any direct

17

contact with law enforcement regarding any aspect of the situation.  DSUF ¶¶ 13-16.  Therefore,

there is nothing to buttress the Amended Complaint's conclusory and illogical allegation that

FYF's alleged negligence "led to a criminal complaint."  Compl. ¶ 4.  This absence of evidence,

Celotex, 477 U.S. at 325, leaves this contention as precisely the sort of "mere allegation" that

Anderson instructs trial courts to disregard at the summary judgment phase of the case.  See

Anderson, 477 U.S. at 256.

At bottom, Mr. De Barros' negligence claim "is manifestly founded upon the delusion

that anyone who has had any connection with the events described . . . is a wrongdoer."  Pigott v.

Lynn Police Dep't, No. 93-1115, 1993 WL 375821, at *6 (1st Cir. Sept. 27, 1993) (per curiam).

Finding that the negligence claim fails as a matter of law because of the utter absence of

evidence from which a fact finder could conclude that the elements of duty and causation are

established, I recommend that the Court grant FYF's motion for judgment against Mr. De Barros

on his claim of negligence.[15]

### B.   **Defamation**

To maintain an action for defamation of a non-public figure like Mr. De Barros,

Massachusetts law requires a plaintiff must allege facts to show "a) a false and defamatory

statement concerning another; (b) an unprivileged publication to a third party; (c) fault

amounting at least to negligence on the part of the publisher; and (d) either actionability of the

statement irrespective of special harm or the existence of special harm caused by the

publication[.]"  Harrington v. Costello, 7 N.E.3d 449, 456 n.15 (Mass. 2014) (quoting

Restatement (Second) of Torts § 558 (1977)).  Rhode Island law is similar: a defamation plaintiff

---

[15] In light of this recommendation, I have not reached FYF's argument that the negligence claim also fails as a
matter of law because Mr. DeBarros has admitted that he has no documentary evidence to substantiate his claim of
economic, physical and mental damages.

must prove: "(a) a false and defamatory statement concerning another; (b) an unprivileged

publication to a third party; (c) fault amounting at least to negligence on the part of the publisher;

and (d) damages, unless the statement is actionable irrespective of special harm." Healey v. New

England Newspapers, Inc., 555 A.2d 321, 324 (R.I. 1989) (cleaned up).  Whether a

communication is defamatory is a question of law for the court.  Sequin, LLC v. Renk, C.A. No.

20-62WES, 2021 WL 124250, at *7 (D.R.I. Jan. 13, 2021), adopted, 2021 WL 391519 (D.R.I.

Feb. 4, 2021); Foley v. Lowell Sun Pub. Co., 533 N.E.2d 196, 197 (Mass. 1989) (threshold issue

of whether statement is susceptible to defamatory meaning is for the court).

Mr. De Barros' defamation claim is aimed solely at communications by Ms. Fontaine.

However, Mr. De Barros' assertion that Ms. Fontaine said disparaging things directly to him

does not allege actionable defamation because the essential element of publication to a third

party is missing.  Harrington, 7 N.E.3d at 456 n.15; Healey, 555 A.2d at 324.  Ms. Fontaine's

only other statements were all allegedly made to Jennifer Hillery, the office manager of Family

Medical Practice.  See DSUF ¶ 16 (Mr. De Barros' admission of no communications between

FYF and its employees with law enforcement).  As set out in his interrogatory answers, Mr. De

Barros claims that Ms. Fontaine encouraged Ms. Hillery to pursue the criminal complaint and

offered to support Family Medical Practice with "any information."  ECF No. 86 at 6.  This

description of the communication is not materially different from the description of it in FYF's

Office Management System:

> Calling the office Katie signed for the flowers they fear this cm and will no longer
> be accepting flowers from him.  She said if the police need to be called they will
> cooperate fully.

ECF No. 86-2 at 6.  For purposes of summary judgment, the Court assumes that Mr. De Barros'

version of this communication is true.

19

Viewed from this plaintiff-friendly perspective, there is simply no possibility that this communication is defamatory.  It does not amount to a statement of fact; as a result, there is nothing about it that is even arguably false.  Therefore, Mr. De Barros' defamation stumbles at the threshold: "[t]he lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation."[16]  Felix v. Donnelly, Civil Action No. 12-10997-IT, 2017 WL 2261127, at *10 (D. Mass. 2017) (internal quotation marks omitted); Lundgren v. Pawtucket Firefighters Ass'n Local No. 1261, 595 A.2d 808, 815 (R.I. 1991) ("Truth is . . . an absolute defense" to defamation claim).  Indeed, the accused statement seems to be nothing more than Ms. Fontaine's expression of encouragement and of her intent to cooperate, if needed, with law enforcement, which would be privileged conduct.  Sietins v. Joseph, 238 F. Supp. 2d 366, 379 n.11 (D. Mass. 2003) (in some circumstances statements made in connection with police investigation subject to qualified privilege); Butera v. Boucher, 798 A.2d 340, 351 (R.I. 2002) (qualified privilege for good faith report to police).  Further, there is no evidence that Ms. Fontaine was ever asked to follow up on her offer of assistance or that anything Ms. Fontaine said to anyone had any impact either on the wrongful (as the Court must assume) criminal complaint initiated by Family Medical Practice or the Commonwealth's decision to wrongfully (as assumed) prosecute Mr. De Barros.  DSUF ¶ 16.  This dearth of evidence is fatal to Mr. De Barros' defamation claim.  See Celotex, 477 U.S. at 325.

---

[16] Massachusetts law has a narrow exception to this principle: a defamation action may proceed if the plaintiff can show that the defendant acted with malice in publishing the statement.  Mateo v. Univ Sys. of New Hampshire, Civil Action No. 18-11953-FDS, 2019 WL 199890, at *7 (D Mass. Jan 14, 2019).  Mr. DeBarros has presented nothing from which a fact finder might draw such an inference.  See Edwards v. Comm., 76 N.E.3d 248, 259 (Mass. 2017) (internal quotation marks omitted) (noting difficult and onerous task of pleading malice; malice in context of defamation "does not mean the defendant's dislike of, hatred of, or ill will toward, the plaintiff . . . . [but] that the defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false").

Mindful of the high bar set by both Rhode Island and Massachusetts for actionable defamation, Burke v Gregg, 55 A.3d 212, 219-220 (R.I. 2012) (a plaintiff in a defamation action carries a substantial burden); Eyal v. Helen Broadcasting Corp., 583 N.E.2d 228, 231 n.7 (Mass. 1991) (defamation is traditionally disfavored action), I find that Mr. De Barros' defamation claim against Ms. Fontaine fails as a matter of law.  Further, defamation is an intentional tort. Therefore, judgment must enter in favor of FYF, not only because there is no evidence of anything defamatory but also because FYF cannot be liable for Ms. Fontaine's intentional conduct.  Unless Mr. De Barros presents evidence to permit the inference that Ms. Fontaine's duties gave rise to a risk that she would make false statements to third parties about FYF's customers in the course of furthering FYF's business, FYF cannot be liable for her intentional defamation.  Drake v. Star Market Co., 526 A.2d 517, 519 (R.I. 1987); Worcester Ins. V. Fells Acres Day School, Inc., 558 N.E.2d 958, 967 (Mass. 1990) (employer liable for intentional tort of employee if the act committed within scope of employment motivated in part by a purpose to serve employer).  He has not done so.  Therefore, the defamation claim against FYF also fails as a matter of law.[17]

### C.      Intentional Infliction of Emotional Distress Due to Public Release of Private Information

Buried in his defamation claim, Mr. De Barros accuses FYF and Ms. Fontaine of having "intentionally inflicted emotional distress . . . by making public privileged information to a third

---

[17] Mr. DeBarros' defamation additionally fails under Rhode Island law because the applicable statute of limitations had run by the time he filed this case – Rhode Island law bars any action for words spoken brought more than one year after the accused words were uttered.  R.I. Gen. Laws § 9-1-14(a); see AAA Wholesalers Distribution, LLC v. Tropical Cheese Indus., Inc., C.A. No. 18-542 WES, 2020 WL 563376, at *1 (D.R.I. Feb. 5, 2020).  The statements were allegedly made in July 2016, Plaintiff filed this matter in September 2018 – thus, his claim is over one year out of time.  By contrast, the Massachusetts limitation period for defamation is not a bar because it permits a case to be filed within three years.  Wolsfelt v. Gloucester Times, 155 N.E.3d 737, 742 (Mass. App. Ct. 2020) ("An action for defamation must be commenced within three years after the cause of action accrues.").

party." Compl. at 3.  There is no such claim under the common law of either Rhode Island or

Massachusetts.[18]  However, under Massachusetts statutory law, such a claim potentially arises

pursuant to Mass. Gen. Laws ch. 214, § 1B, which provides:

> A person shall have a right against unreasonable, substantial or serious
> interference with his privacy. The superior court shall have jurisdiction in equity
> to enforce such right and in connection therewith to award damages.

Mass. Gen. Laws ch. 214, § 1B.  Similarly, Rhode Island provides the statutory guarantee of the

right "to be secure from unreasonable publicity given to one's private life."  R.I. Gen. Laws § 9-

1-28.1(a)(3).  Mindful of Mr. De Barros' *pro se* status, the Court assumes that these statutes are

what he intended to rely on.

To state a claim under the Massachusetts statute based on the release of private

information, a plaintiff must demonstrate that there was "[1] a gathering and dissemination of

facts of a private nature that [2] resulted in an unreasonable, substantial or serious interference

with his privacy."  Branyan v. Southwest Airlines Co., 105 F. Supp. 3d 120, 126 (D. Mass. 2015)

(citing Nelson v. Salem State Coll., 845 N.E.2d 338, 348 (Mass. 2006)); see also; Ortiz v.

Examworks, Inc., 26 N.E.3d 165, 173 (Mass. 2015) (invasion must be both unreasonable and

substantial or serious).  "To fall under the protection of the statute, the disclosed facts must be of

a highly personal or intimate nature," released without consent or a legitimate purpose, causing

the plaintiff to suffer damages.  Hayes v. Mirick, 378 F. Supp. 3d 109, 117 (D. Mass. 2019)

---

[18] "Massachusetts has never recognized a common-law invasion of privacy claim."  Barrigas v. United States, Civil Action No. 17-cv-10232-ADB, 2018 WL 1244780, at *8 (D. Mass. Mar. 9, 2018) (internal quotation marks omitted).  Nor has Rhode Island.  Cliff v. Nar. TV, L.P., 688 A.2d 805, 814 (R.I. 1996).  The Court might speculate that Mr. DeBarros was seeking to allege common law intentional infliction of emotional distress.  Both Rhode and Massachusetts recognize such claims, but only based on evidence of conduct that is reckless or intentional, as well as extreme and outrageous, "beyond all possible bounds of decency."  See Swerdick v. Koch, 721 A.2d 849, 862-63 (R.I. 1998); Agis v. Howard Johnson Co., 355 N.E. 2d 315, 318-19 (Mass. 1976) (internal quotation marks omitted).  Mr. DeBarros' has utterly failed to allege anything approaching that standard.  A claim based on intentional infliction of emotional distress fails as a matter of law under both Rhode Island law and Massachusetts law.

(cleaned up).  Under the Rhode Island statute, Mr. De Barros must establish that a fact that is "private" was unreasonably disclosed, <u>Shannahan v. Moreau</u>, 202 A.3d 217, 231 (R.I. 2019), and that the disclosure is a type that would be objectionable to a reasonable person of ordinary sensibilities, <u>Lamarque v. Centreville Sav. Bank</u>, 22 A.3d 1136, 1142 (R.I. 2011), as well as evidence of damages that resulted from any alleged publication.  <u>See</u> <u>Boudreau v. Cent. Falls Det. Facility Corp.</u>, C.A. No. 20-324-JJM-LDA, 2020 WL 6064548, at *3 (D.R.I. Oct. 14, 2020).

Here, the undisputed facts are clear – Mr. De Barros himself sent the content of his full-length card message to multiple persons at FYF, minimizing its status as a fact of a private nature.  More material and fatal to the claim, there is simply no evidence that the card message was opened by anyone other than the intended recipient (Dr. Redmond).  <u>See</u> DSUF ¶ 15. Lacking anything to establish these essential elements, a privacy-based claim, whether under the law of Rhode Island or Massachusetts, fails as a matter of law.  <u>See</u> <u>Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 567 N.E.2d 912, 915 (Mass. 1991) (internal quotation marks omitted) ("[t]he law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not actionable").  Accordingly, I recommend that judgment enter against Mr. De Barros and in favor of FYF and Ms. Fontaine with respect to a presumed claim of intentional public release of private information.

## V.    Conclusion

I recommend that FYF's motion for summary judgment (ECF No. 86) be granted and that the Court should enter judgment as a matter of law against Mr. De Barros and in favor of both FYF and Ms. Fontaine.  If the Court adopts these recommendations, this action should be dismissed in its entirety.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 13, 2021

24